**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAMID SAFARI, M.D., and MARK FAHLEN, M.D.,<br><br>  Plaintiffs,<br><br>  v.<br><br>KAISER FOUNDATION HEALTH PLAN, KAISER FOUNDATION HOSPITALS, and SUTTER CENTRAL VALLEY HOSPITALS,<br><br>  Defendants.<br>_____/ | No. C 10-05371 JSW<br><br>**ORDER GRANTING IN PART AND DENYING AS MOOT IN PART MOTIONS TO DISMISS** |

**INTRODUCTION**

This matter comes before the Court upon consideration of the Motion to Dismiss filed by Kaiser Foundation Health Plan and Kaiser Foundation Hospitals (the "Kaiser Defendants"). This matter also comes before the Court upon consideration of the Motion to Dismiss filed by Sutter Central Valley Hospitals ("Sutter") (collectively "Defendants," unless otherwise noted). The Court has carefully considered the parties' papers, relevant legal authority, and has had the benefit of oral argument, and the Court HEREBY GRANTS, IN PART, and DENIES, IN PART, AS MOOT the motions.

**BACKGROUND**

This case arises out of facial and as applied challenges to the constitutionality of California's statutory scheme governing medical peer review proceedings, California Business and Professions Code sections 805, *et seq.*, as well as California Code of Civil Procedure

1  section 1094.5(d).[1]  Plaintiffs, Dr. Hamid Safari ("Dr. Safari") and Dr. Mark Fahlen ("Dr.
2  Fahlen") (collectively "Plaintiffs"), allege that this statutory scheme violates the Due Process
3  Clause of the Fourteenth Amendment to the United States Constitution because, in their view, it
4  permits private parties to deprive them of their protected property interest to practice medicine
5  at these hospitals without due process of law.

### B.   Facts and Procedural History Pertinent to Dr. Safari.

7  Dr. Safari is an obstetrician and perinatologist, who was employed at the Kaiser-Fresno
8  Medical Center, a private hospital, from 1997 until February 29, 2008.  (Compl. ¶¶ 5, 74.)
9  According to Dr. Safari, between 2001 and 2003, he repeatedly observed and reported
10 corruption in the Quality Assurance Committee of his department, which led to certain members
11 of the department losing their positions.  These physicians apparently became "extremely
12 antagonistic" to Dr. Safari.  (*Id.* ¶ 44.)
13 On April 21 and 22, 2005, Dr. Safari attended the birth of a S.V., a high risk obstetrical
14 patient, who was having twins.  One of the twins was born lifeless with a neck injury after a
15 vacuum assisted delivery.  Dr. Safari contends that he did nothing wrong doing the procedure,
16 but he alleges that his "adversaries claimed that [he] had negligently caused the death by pulling
17 too hard with a vacuum."  (*Id.* ¶ 45.)  The Kaiser Defendants rescinded Dr. Safari's privileges to
18 do vaginal deliveries, and Dr. Safari requested a hearing to contest the proposed discipline.  (*Id.*
19 ¶ 46.)  Dr. Safari did not prevail at this hearing, but, for various reasons, he did not appeal the
20 decision.  (*Id.* ¶¶ 47-49.)  On January 12, 2009, after an evidentiary hearing, the Medical Board
21 of California determined that Dr. Safari's use of the vacuum was appropriate and within the
22 standard of care.  (*Id.* ¶¶ 59-61.)
23 Dr. Safari alleges that after this hearing, the Kaiser Defendants' "top level management
24 decided they wanted to remove [him] entirely from the Kaiser system."  (*Id.* ¶ 50.)  Although

---

[1] Based on the allegations in Plaintiffs' Complaint, on January 30, 2012, this Court issued Orders pursuant to Federal Rule of Civil Procedure 5.1(b) and 28 U.S.C. § 2403(b), certifying to the Attorney General of the State of California that Plaintiffs had drawn into question the constitutionality of Business and Professions Code sections 809, *et seq.*  The State of California has not chosen to intervene.  At the hearing, Plaintiffs clarified that they also raise challenges to Business and Professions Code section 805 and California Code of Civil Procedure section 1094.5(d).

2

the Kaiser Defendants offered him a monetary settlement to leave, he chose to stay. (*Id.* ¶¶ 50, 52.) He alleges that shortly thereafter, on April 24, 2007, the Kaiser Defendants initiated a new disciplinary proceeding based on the S.V. case and alleged behavioral issues. (*Id.* ¶¶ 51-52.) The Kaiser Defendants sent Dr. Safari a notice of the recommended disciplinary action on September 23, 2007, and Dr. Safari requested a hearing on October 3, 2007. In November 2007, the Kaiser Defendants offered Dr. Kaiser $2,000,000.00 to leave Kaiser. (*Id.* ¶¶ 53-57.) "After Dr. Safari did not accept Kaiser's monetary offer to leave," the Kaiser Defendants summarily suspended him on February 29, 2008. (*Id.* ¶ 58.) Dr. Safari again requested a hearing to challenge this decision, and he also raised challenges to the Kaiser Defendants' by-laws and fair hearing plan. (*Id.* ¶¶ 58, 62-68.) The hearing panel recommended that the Kaiser Defendants terminate Dr. Safari's privileges at Kaiser, and on September 23, 2010, the Kaiser Defendants' Board of Directors affirmed the summary suspension and terminated his privileges. (*Id.* ¶¶ 73-74.) Dr. Kaiser contends that there were numerous flaws in these proceedings and that, as a result, the Kaiser Defendants violated his due process rights. (*See generally* Compl. ¶¶ 20-40, 53-55, 57-58, 62-73.)

On December 17, 2010, Dr. Safari filed a petition for a writ of mandate to overturn the Kaiser Defendants decision to terminate his privileges. Those proceedings, *Safari v. Kaiser Foundation Health Plan and Kaiswer Foundation Hospitals*, Alameda County Superior Court No. RG 10551842, still are pending. (*Id.* ¶¶ 76-77.)[2] Dr. Safari also alleges that the delays attendant in the judicial review process violate his due process rights, because he cannot practice medicine. (*Id.* ¶¶ 74-79.)

**B.    Facts and Procedural History Pertinent to Dr. Fahlen.**

Dr. Fahlen is an internist and nephrologist, who, from 2004 through January 2011, held privileges at the Memorial Medical Center, ("MMC"), a private hospital Sutter operated in Modesto. (Compl. ¶¶ 6, 80-81, 85.) Between January 2004 and April 2008, Dr. Fahlen complained about serious nursing errors at MMC, and he claims Sutter retaliated against him

---

[2]    At the hearing, Kaiser informed the Court that the state court had denied Safari's petition for writ of mandate. Dr. Safari has appealed that decision.

3

1 for these complaints.  (*Id.* ¶¶ 81-82.)  According to Dr. Fahlen, at Sutter's behest, Dr. Fahlen's
2 employer terminated him, and when Dr. Fahlen refused to leave Modesto, MMC's Medical
3 Executive Committee eventually brought charges against Dr. Fahlen.  A medical disciplinary
4 hearing followed based on allegations of inappropriate behavior.  (*Id.* ¶ 83.)  Although the
5 hearing panel determined that Dr. Fahlen's privileges should not be terminated, and although
6 MMC's Medical Executive Committee did not appeal that decision, on January 7, 2011, Sutter
7 terminated Dr. Fahlen's privileges at MMC.  Dr. Fahlen contends that Sutter did so in violation
8 of its bylaws.  (*Id.* ¶¶ 84-85.)  Dr. Fahlen contends that there were numerous flaws in these
9 proceedings, which violated his due process rights.  (*Id.* ¶¶ 20-40, 84-86.)

10 On March 9, 2011, Dr. Fahlen sued Sutter and MMC's hospital administrator, pursuant
11 to California Health and Safety Code § 1278.5.  Those proceedings, *Fahlen v. Sutter Central*
12 *Valley Hospitals,* Stanislaus County Superior Court No. 369888, still are pending.  (*Id.* ¶¶ 87-
13 98; Declaration of James E. Conforti in Support of Sutter's Request for Judicial Notice, Ex. 1.)[3]
14 Dr. Fahlen alleges that the delays attendant to these judicial proceedings also deny him due
15 process, because he cannot practice medicine.  (*Id.*)

16 **D.    Plaintiffs' Claims and Requested Relief.**

17 Plaintiffs allege that California's peer review proceedings violate due process because:
18 (1) Business and Professions Code section 809.2(a) permits private health care corporations to
19 unilaterally choose the judge and jury for disciplinary hearings; (2) the statutes do not provide a
20 standard of care to determine quality issues; and (3) the statutes do not provide for timely,
21 effective and independent judicial review of disciplinary proceedings.  (Compl. ¶¶ 19-40.)
22 Plaintiffs claim that their individual hearings were flawed because, *inter alia*, the panel
23 members were biased, the Defendants withheld evidence, or failed to apply a consistent
24 standard to evaluate the evidence.  (*See generally id.* ¶¶ 55, 62-73, 85.)  Dr. Safari seeks an
25 injunction that would require the Kaiser Defendants to reinstate his privileges and credentials to
26 practice at their hospitals.  (*Id.* ¶ 108.)  Dr. Fahlen seeks an injunction that would require Sutter

---

[3] At the hearing, Sutter represented that it has appealed the denial of its special motion to strike under California's Anti-SLAPP law and has sought of writ of mandate on a discovery dispute.

4

1 to reinstate his privileges and credentials to practice at MMC.  (*Id.* ¶ 109.)  Plaintiffs also seek a
2 "declaration from this Court ... that California law governing medical disciplinary hearings of
3 physicians and other California licentiates pursuant to California Business and Professions
4 Code section 809 et seq. violates Federal due process guaranteed by the Fourteenth Amendment
5 of the United States Constitution."  (Compl. ¶ 107.)

6 The Court shall address additional specific facts as necessary in the remainder of this
7 Order.

## ANALYSIS

9 Defendants have raised numerous arguments in support of their motion to dismiss.
10 Because the Court finds that Plaintiffs cannot establish that the Defendants acted under color of
11 state law, the Court does not address all of Defendants' arguments in favor of dismissal.[4]

**A.   Applicable Legal Standard.**

13 A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the
14 pleadings fail to state a claim upon which relief can be granted.  The complaint is construed in
15 the light most favorable to the non-moving party and all material allegations in the complaint
16 are taken to be true.  *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).  However, even
17 under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's
18 obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and
19 conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell*
20 *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265,
21 286 (1986)).

22 Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but
23 must instead allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at

---

[4] The Defendants also moved to dismiss on the basis that the Plaintiffs did not have standing to pursue claims against the hospital where they did not hold privileges. Plaintiffs conceded that point with respect to their as applied challenges and claims for injunctive relief.  The Court, therefore, GRANTS, IN PART, Defendants' motion to dismiss on this basis on this basis as well.  Sutter also moved to sever Dr. Fahlen's case from Dr. Safari's case.  In light of the Court's ruling, the Court DENIES, IN PART, AS MOOT that aspect of Sutter's motion.  Finally, although the Court does not reach the issue, the Court notes an apparent tension in the parties' position on state action and abstention under *Younger v. Harris*, 401 U.S. 37 (1971).

5

1   570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the
2   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
3   *Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility
4   standard is not akin to a probability requirement, but it asks for more than a sheer possibility
5   that a defendant has acted unlawfully.... When a complaint pleads facts that are merely
6   consistent with a defendant's liability, it stops short of the line between possibility and
7   plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation
8   marks omitted). If the allegations are insufficient to state a claim, a court should grant leave to
9   amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291,
10  296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242,
11  246-47 (9th Cir. 1990).

**B.    California's Statutory Scheme Regarding the Peer Review Process**.

Under California law, a physician's right or privilege to use a hospital's facilities is a "property interest directly connected to the physician's livelihood." *Mileikowski v. West Hills Hosp. and Med. Ctr.*, 45 Cal. 4th 1259, 1267 (2009) (citing *Anton v. San Antonio Community Hospital*, 19 Cal. 3d 802, 823 (1977)). "Decisions concerning medical staff membership are made through a process of hospital peer review. Every licensed hospital is required to have an organized medical staff responsible for the adequacy and quality of the medical care rendered to patients in the hospital." *Mileikowski*, 45 Cal. 4th 1259, 1267 (2009) (citing, *inter alia*, 22 Cal. Code Regs. § 70703(a)).

"The medical staff acts chiefly through peer review committees, which among other things, investigate complaints about physicians and recommend whether staff privileges should be granted or renewed." *Mileikowski*, 45 Cal. 4th at 1267. A hospital's medical staff is required to adopt written by-laws "which provide formal procedures for the evaluation of staff applications and credentials, appointments, reappointments, assignment of clinical privileges, appeals mechanisms and other such subjects or conditions with the medical staff and governing body deem appropriate." 22 Cal. Code Regs. § 70703(b); *see also Mileikowski*, 45 Cal. 4th at 1267; Cal. Bus. & Prof. Code § 2282.5; 22 Cal. Code Regs. §§ 70701, 70703. "It is these

6

bylaws that govern the parties' administrative rights." *Unnamed Physician v. Board of Trustees of St. Agnes Medical Center*, 93 Cal. App. 4th 607, 617 (2001).

"If a peer review committee recommends that the privileges of the physician be restricted or revoked because of the manner in which he or she exercised those privileges, a series of procedural mechanisms kick into place - all governed by state law." *Unnamed Physician*, 93 Cal. App. 4th at 616 (citing Cal. Bus & Prof. Code §§ 809-809.8; 22 Cal. Code Regs. § 70703(b)). "The peer review process, while generally delegating responsibility to the private sector to monitor the professional conduct of physicians, establishes minium protections for physicians subject to adverse action in the peer review system." *Mileikowski*, 45 Cal. 4th at 1268; *Unnamed Physician*, 93 Cal. App. 4th at 617 ("The statutory scheme delegates to the private sector the responsibility to provide fairly conducted peer review in accordance with due process, including notice, discovery and hearing rights, all specified in the statute.").

When a peer review committee recommends a "final proposed action" that will require a hospital to file a report with California's Medical Board pursuant to Business and Professions Code section 805 (an "805 Report"), "the affected physician is entitled to notice and then may request a hearing for the purpose of determining if the recommendation is reasonable and warranted." *Mileikowski*, 45 Cal. 4th at 1268-69 (citing Cal. Bus. & Prof. Code §§ 809.1(a)-(b), 809.3(b)(1-3). "The hearing shall be held, as determined by the peer review body, before a trier of fact, which shall be an arbitrator or arbitrators selected by a process mutually acceptable to the [physician] and the peer review body, or before a panel of unbiased individuals who shall gain no direct financial benefit from the outcome, who have not acted as an accuser, investigator, factfinder, or initial decisionmaker in the same matter, and which shall include where feasible, an individual practicing in the same specialty as the [physician]." Cal. Bus. & Prof. Code § 809.2(a). Section 809.2 also includes additional provisions designed to ensure that the hearing officer is unbiased, and it gives the physician the right to voir dire and challenge the impartiality of the hearing officer or any panel member. *Id.* § 809.2(b)-(c).

The parties also have the right to obtain documents, call and cross-examine witnesses, and to present and rebut evidence. *Id.* §§ 809.2(d), 809.3(a). Finally, at the conclusion of a

7

1  hearing, "the parties are entitled to the written decision of the trier of fact, 'including findings of
2  fact and a conclusion articulating the connection between the evidence produced at the hearing
3  and the decision reached.'" *Mileikowski*, 45 Cal. 4th at 1269 (quoting Cal. Bus. & Prof. Code §
4  809.4(a)(1)).  A party aggrieved by a decision may seek a writ of mandate pursuant to
5  California Code of Civil Procedure 1094.5.  *See, e.g.,* Cal. Code Civ. P. § 1094.5(d) (setting
6  forth standard of review).

**C.     Plaintiffs Have Not Shown That Defendants Acted Under Color of State Law.**

Plaintiffs bring this action pursuant to 42 U.S.C. section 1983, which "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).  Section 1983 is not itself a source of substantive rights.  It merely provides a method for vindicating federal rights elsewhere conferred.  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).  To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Chudacoff v. University Medical Center of Southern Nevada*, 649 F.3d 1143, 1149 (9th Cir. 2011).

It is undisputed that the Kaiser Defendants and Sutter are private corporations, and that the hospitals at which Plaintiffs held privileges were private hospitals.  In general, a private individual or private entity, cannot be held liable under Section 1983 because Section 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrong."  *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49 (1999) (quotation marks omitted); *Sutton v. Providence St. Joseph Med. Ctr.,* 192 F.3d 826, 835 (9th Cir.1999).  However, a court may find that private conduct qualifies as state action "if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"  *Brentwood Academy v. Tennessee Secondary Sch. Athl. Ass'n*, 531 U.S. 288, 295 (2001) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)); *see also Chudacoff*, 649 F.3d at 1150.

8

1    Following *Brentwood*, the Ninth Circuit has identified four criteria or tests to determine
2    whether state action exists: (1) public function; (2) joint action; (3) governmental compulsion or
3    coercion; and (4) governmental nexus.[5] *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).
4    "Satisfaction of any one test is sufficient to find state action, so long as no countervailing factor
5    exists." *Id.*; *see also Chudacoff*, 649 F.3d at 1150 (a "nominally private actor is 'controlled by
6    an agency of the State, when it has been delegated a public function by the State, when it is
7    entwined with governmental policies or when government is entwined in its management and
8    control," an individual's conduct can be considered state action) (quoting *Brentwood*, 531 U.S.
9    at 295-96).

10    Plaintiffs argue that *Chudacoff*, *supra*, controls. In that case, the Ninth Circuit
11    concluded that individual members of a county hospital's medical executive committee could
12    be considered state actors. 649 F.3d at 1146. The court reasoned that the defendant hospital
13    was a "public hospital, and there is no dispute that the operation of a public hospital is state
14    action and that a public hospital is required to meet the provisions of the Fourteenth
15    Amendment in the admission of physicians to its staff." *Id.* (internal quotations and brackets
16    omitted). Because the private individuals, as members of the defendant's Medical Staff, were
17    "controlled and managed by the [defendant hospital's] Board," and because their "authority to
18    deprive [plaintiff] of his staff privileges flowed directly from the" defendant hospital, "whose
19    authority to regulate physician privileges at a county hospital is in turn directly authorized by
20    Nevada law," the court concluded those individuals' actions could be fairly attributable to the
21    state. *Id.* at 1150-51.

22    The court also stated that "[a]lthough determining state action can admittedly be an
23    imperfect science," it did not consider the case to be a difficult one. *Id.* at 1149. The court then
24    suggested a more difficult case might be presented by the fact pattern at issue in this case, *i.e.*
25    when it involved "a private hospital whose only state link is its subjection to state regulation."
26    *Id.* (citing, *inter alia*, *Pinhas v. Summit Health Ltd.*, 894 F.2d 1024 (9th Cir. 1990)). Defendants

---

[5]    At the hearing, Plaintiffs agreed that there are no disputed facts that would preclude the Court from resolving this question as a matter of law.

9

1 argue that this, in fact, is an easy case and that *Pinhas*, rather than *Chudacoff*, controls the
2 outcome.

3 In *Pinhas*, the plaintiff claimed, *inter alia*, that Business and Professions Code sections
4 805 and 805.5 and the Health Care Quality Improvements Act of 1986, 42 U.S.C. sections
5 11101-11152, were unconstitutional and violated his due process rights under the Fourteenth
6 Amendment. *Id.* at 1026, 1033. The Ninth Circuit affirmed the district court's dismissal for
7 lack of state action.

> The challenged action here, the removal of Pinhas's staff privileges ... cannot be attributed to the state of California. Only private actors were responsible for the decision to remove Pinhas. That the decision was made pursuant to a review process that has been approved by the state is of no consequence: the decision ultimately turned on the "judgments made by private parties according to professional standards that are not established by the state."

12 *Pinhas*, 894 F.2d at 1034 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1008 (1982)); *see also id.*
13 ("Because Pinhas's removal was instrumented solely by private parties, state action is absent
14 and his due process claim was properly dismissed."); *see also Ezpeleta v. Sisters of Mercy*
15 *Health Corp.*, 800 F.2d 119, 122 (7th Cir. 1986); *Crowder v. Conlan*, 740 F.2d 447, 450 (6th
16 Cir. 1984).

17 Plaintiffs argue that *Pinhas* is not controlling, because the court did not address Business
18 and Professions Code Section 809, which was enacted in 1989 and provides, *inter alia*, that "the
19 laws of this state provide a more careful articulation of the protections for both those
20 undertaking peer review activity and those subject to review, and better integrate public and
21 private systems of peer review." Cal. Bus. & Prof. Code § 809(a)(9).[6] Plaintiffs have
22 disavowed any reliance on a compulsion or coercion theory. Rather, they argue that,
23 notwithstanding the holding in *Pinhas*, the Defendants are acting under color of state law,
24 because: (1) the Defendants are performing a public function; (2) the Defendants are willing
25 participants in joint activity with the State; and (3) the Defendants' conduct is entwined with

---

[6] This subsection explains why California chose to opt out of specific provisions of the Health Care Quality Improvement Act.

10

1 governmental policies.  (*See also* Compl. ¶¶ 14-18 (setting forth allegations regarding state
2 action).)

### 1. Public Function.

"Under the public function test, 'when private individuals are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations.'" *Lee v. Katz*, 276 F.3d 550, 554-55 (9th Cir. 2002) (quoting *Evans v. Newton*, 382 U.S. 296, 299 (1966)).  "To satisfy the public function test, the function at issue must be both traditionally and exclusively governmental." *Id.* Plaintiffs argue that this case is analogous to *Culbertson v. Leland*, 528 F.2d 426 (9th Cir. 1975).  In that case, the court concluded that the defendant, the owner of a hotel, acted under color of law when, after she evicted the plaintiffs, she seized their personal property as collateral, pursuant to the Arizona Innkeeper's Lien statute. *Culbertson*, 528 F.2d at 427.  The court reasoned the defendant was acting under color of state law because, "the lien statute at issue here gave [defendant] a right she would not have had at common law." *Id.* at 430.  The court also noted that the parties did not have a contractual relationship regarding disposition of the property. *Id.* at 432.  Because the statute was the "sole authority for the seizure, which would not otherwise have been even colorably legal, ... [a]nd since the statute was the sine qua non for the activity in question, the state's involvement through the statute is not insignificant." *Id.*

In contrast to the facts in *Culbertson*, when California's legislature amended California Business and Professions Code section 809, it did not grant private hospitals like Defendants rights they did not have at common law.  Indeed, Plaintiffs do not argue otherwise. *See, e.g., Anton*, 19 Cal. 3d at 825; *Applebaum v. Board of Directors*, 104 Cal. App. 3d 648, 656-67 (1980); *see also Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989) (concluding that plaintiff failed to allege facts showing state action under public function theory where statutory scheme "simply authorize[d] action" that private hospitals had at common law).  Moreover, unlike the parties in the *Culbertson* case, there was a contractual relationship governing the rights at issue,

11

1 namely Defendants' by-laws and fair hearing plans. *See, e.g., Unnamed Physician*, 93 Cal.
2 App. 4th at 617 ("It is these bylaws that govern the parties' administrative rights.").

3 The Court concludes that, taking the facts alleged as true, Plaintiffs have not shown that
4 the public function test is satisfied.

**2.    Joint Action.**

6 To determine if the joint action test is satisfied, a court considers whether a state has "so
7 far insinuated itself into a position of interdependence with [the private entity] that it must be
8 recognized as a joint participant in the challenged activity, which on that account, cannot be
9 considered to have been so 'purely private' as to fall without the scope of the Fourteenth
10 Amendment." *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 725 (1961); *see also*
11 *Kirtley*, 326 F.3d at 1088; *Pinhas*, 894 F.2d at 1034 (characterizing test as "symbiotic
12 relationship" test).

13 The *Pinhas* court rejected the plaintiff's argument that the "'integration of public and
14 private systems of peer review' met the 'symbiotic relationship' test set forth in" *Burton*,
15 because there was no "financial relationship" between the State and the persons involved in the
16 peer-review proceedings, "nor is any real property involved." 894 F.2d at 1034. The facts in
17 the Complaint show that the same is true here. Moreover, this is not a case where Plaintiffs
18 allege that the Defendants have conspired with other state actors to deprive them of
19 constitutional rights. *See*, *e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-52 (1970). The
20 only fact on which the Plaintiffs rely to show "joint action" is that "disciplinary actions taken by
21 private corporations" must "be reported to the State in '805 Reports.'" (Compl. ¶ 17; *see also*
22 Docket No. 26 (Opp. Br. to Kaiser Defs. Mot. at 12:5-7).) However, private hospitals were
23 required to make such reports before the Legislature added Section 809 to the Business and
24 Professions Code. Further, the Ninth Circuit rejected that very argument in *Pinhas*. 894 F.2d at
25 1034 (finding that although the defendant was required to make a report to the state board under
26 Business and Professions Code section 805, that fact was "irrelevant in determining whether the
27 state took an active role" in the termination of a physician's privileges).

12

1   The Court concludes that, taking the facts alleged as true, Plaintiffs have not shown that
2 the joint action test is satisfied.

### 3. Entwinement.

Plaintiffs also allege and argue that the peer review process is so "entwined" with governmental policies that the Defendants' conduct is fairly attributable to the State. Plaintiffs argue that *Brentwood* supports a finding of state action on the entwinement theory. In that case, the defendant was a private association incorporated to regulate interscholastic athletic competition in public and private schools. Although "nominally private," the court concluded that "the pervasive entwinement of public officials in its composition and workings" rendered it a state actor. *Brentwood Academy*, 531 U.S. at 298-302.

Plaintiffs attempt to analogize *Brentwood* by arguing that "every private hospital in the state" is compelled "to participate in the State's peer review mechanism...." (Opp. Br. to Kaiser Defs. Mot. at 14:2-3.) However, the facts in this case are distinguishable from the facts in *Brentwood,* in that Plaintiffs do not allege - nor do they argue - that there are any public officials involved in the composition of the hearing panels or hospital Boards. Rather, Plaintiffs rely exclusively on the statutory scheme and on the case law which states that California has delegated responsibility for the peer review process to the private sector to support their "entwinement" theory. *See, e.g., Mileikowski*, 45 Cal. 4th at 1259, 1268; *Shacket v. Osteopathic Medical Board*, 51 Cal. App. 4th 223, 231 (1996) ("The Legislature ... delegated to the private sector the responsibility to provide fairly conducted peer review ... [and] relied upon the peer review bodies ... to discipline its members and report that discipline to the [defendant] as the licensing agency").

The Court finds Plaintiffs' reliance on *Brentwood* unpersuasive. Although California has adopted a statutory scheme to regulate peer review proceedings, the Supreme Court has made clear that the fact that a private actor is "subject to state regulation does not by itself convert [their] action into that of the State for purposes of the Fourteenth Amendment." *Jackson*, 419 U.S. at 350. The Court finds that the facts in this case are not materially different from the facts in *Pinhas*, and it similarly concludes that the challenged actions here "cannot be

13

attributed to the state of California. Only private actors were responsible for the decision[s]" to terminate Plaintiffs' privileges. *Pinhas*, 894 F.2d at 1034. As in *Pinhas*, the fact that those decisions were "made pursuant to a review process that has been approved by the state is of no consequence: the decision ultimately turned on the 'judgments made by private parties according to professional standards that are not established by the State.'" *Id.* (quoting *Blum*, 457 U.S. at 1008).

For these reasons, the Court finds that Plaintiffs have not alleged facts to show that either Sutter or the Kaiser Defendants acted under color of state law and, thus, fail to state a claim under Section 1983. Although normally a court should grant leave to amend, amendment is not required if it would be futile. Based on the arguments presented to the Court, the Court finds that Plaintiffs would not be able to allege any facts to show that Defendants are, in fact, acting under color of state law and granting them leave to amend would be a futile act. Accordingly, the Court dismisses the claims against Kaiser and the Sutter Defendants with prejudice.[7]

**D.    The Court Dismisses the Claims for Declaratory Relief.**

The Defendants also argue that the Court should dismiss the Plaintiffs' claims for declaratory relief for lack of standing. However, the actual issue is whether they are the proper parties to defend against Plaintiffs' facial challenge to Business and Professions Code Sections 805. Plaintiffs' argument that the Defendants are the proper parties depends heavily on their argument that Defendants have acted under color of state law. Following the Ninth Circuit's directive in *Pinhas*, the Court concludes Defendants are not the proper parties to defend a facial challenge to the statutory scheme, and it dismisses Plaintiffs' claims against them on that basis as well. *See Pinhas*, 894 F.2d at 1035 ("We agree with the district court that the appellees are not the appropriate parties to defend a constitutional challenge to the relevant state and federal statutes.") (citing *Jacobson v. Tahoe Regional Planning Agency*, 566 F.2d 1353, 1361 & n. 7 (9th Cir. 1977), *aff'd in part and rev'd in part*, 440 U.S. 391 (1979).

---

[7]    In light of this ruling, the discovery dispute submitted by letter brief on May 8, 2012 is moot.

14

Because the Court cannot find that it would be futile to grant Plaintiffs leave to amend to assert the facial challenge, if Plaintiffs were to name a proper party as a defendant, it shall provide them an opportunity to do so.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART AS MOOT, the motions to dismiss filed by Sutter and the Kaiser Defendants. If Plaintiffs wish to pursue their facial challenge to California Business and Professions Code section 805, *et seq.* and California Code of Civil Procedure 1094.5(d), they may file an amended complaint naming a proper defendant or defendants by no later than June 8, 2012. The Court CONTINUES the case management conference currently scheduled for May 25, 2012, to July 27, 2012 at 1:30 p.m.

If Plaintiffs do not file an amended complaint by June 8, 2012, the Court shall dismiss this case with prejudice.

**IT IS SO ORDERED.**

Dated: May 11, 2012

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE